<u>NOT FOR PUBLICATION</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____

IN RE PAULSBORO
DERAILMENT CASES

                                                   Civil No. 13-784 (RBK/KMW)
                                                   (Doc. No. 79)

_____

DONALD WILSON, et al.,

                     Plaintiffs                          Civil No. 12-7586 (RBK/KMW)

                    v.

CONSOLIDATED RAIL
CORPORATION, et al.,

                   Defendants.

_____

OWEN HAYNES, ON BEHALF
OF HIMSELF AND ALL OTHERS
SIMILARLY SITUATED,

                     Plaintiffs,                   Civil No. 13-410 (RBK/KMW)

                    v.

CONSOLIDATED RAIL
CORPORATION, et al.,

                   Defendants.

_____

```
_____
JOHN STEPHENSON AND TRACY          :
LEE, IN THEIR OWN RIGHT AND         :
ON BEHALF OF ALL OTHERS,            :
SIMILARLY SITUATED,                 :
                                    :
              Plaintiffs            :      Civil No. 13-721 (RBK/KMW)
                                    :
        v.                          :
                                    :
CONSOLIDATED RAIL                   :
CORPORATION, et al.,                :
                                    :
              Defendants.           :
_____ :
                                    :
DONALD WILSON, D/B/A DON'S          :
BARBERSHOP                          :
                                    :
              Plaintiff,            :      Civil No. 13-761 (RBK/KMW)
                                    :
        v.                          :
                                    :
CONSOLIDATED RAIL                   :
CORPORATION, et al.,                :
                                    :
              Defendants.           :
_____ :
```

## **OPINION**

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Consolidated Rail Corporation,

Norfolk Southern Railway Company, and CSX Transportation ("Defendants") to dismiss counts

I, II, III, and VI of the six-count Second Consolidated Class Action Amended Complaint

("Complaint") in this matter,[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

For the reasons stated herein, Defendants' Motion to dismiss is **GRANTED** in part, and **DENIED** in part.

## I.      BACKGROUND

On the morning of November 30, 2012, a freight train derailed and plunged into the Mantua Creek in Paulsboro, Gloucester County, New Jersey when the Paulsboro Bridge, a railroad bridge spanning the creek, buckled and collapsed.  Compl. at ¶ 13, 27-29.  Four tank cars became partially submerged in the creek.  Id. at ¶ 28.  At least one of the derailed railcars that had been carrying 25,000 gallons of vinyl chloride released its cargo into the air and water.  Id. at ¶ 30.  As a result, the Borough of Paulsboro declared a state of emergency and shortly thereafter, persons who live close to the accident site were directed to evacuate or shelter in place.  Id. at ¶ 39-40.  Ultimately, approximately 600 residents were evacuated from the area over the several days following the derailment due to safety concerns related to the vinyl chloride spill.  Id. at ¶ 41.  The evacuation lasted for approximately one week.  Outside of the evacuation zone, Paulsboro residents were told to remain indoors until a clean-up was completed.  Id.  at ¶ 42.

Plaintiffs filed suit, alleging that Defendants acted negligently and recklessly in their operation of the freight train and maintenance of the bridge.  The railroad bridge was designed to swing open when no rail traffic was present in order to allow water travel along the Mantua Creek.  Id. at ¶ 15.  In order for rail traffic to safely cross after the bridge is opened, the bridge

---

[1] As of the date of this opinion, seventeen complaints related to the Paulsboro Derailment have been consolidated for the purposes of discovery and case management, and assigned a master docket number.  Interim Lead Counsel for four of the consolidated cases, which appear in the caption of this opinion and all of which were filed by purported classes of plaintiffs, was granted leave to file a Second Consolidated Class Action Amended Complaint ("Complaint") on June 12, 2013.  That Complaint was filed on June 13, 2013.  The Interim Lead Counsel was also appointed as lead counsel for a fifth case, Pollicino v. Consol. Rail Corp., Civ. No. 12-7648, that is not involved in the instant motion. See Doc. No. 47, In re Paulsboro Derailment, Civ. No. 13-784.

swings back into place and the rails on the bridge lock into place with the rails on either side of the bridge.  Id. at ¶ 25.  When the rails are not properly positioned for rail travel, a red signal appears to approaching trains.  Id.  Plaintiffs allege that the train proceeded across the bridge against a red signal and that shortly before the derailment, Defendants had been notified of problems relating to the operation of the bridge, but failed to correct the problems.  Id. at 16, 17, 26.  Plaintiffs in this case are members of a purported class of individuals and businesses in Gloucester County who incurred expenses and lost income as a result of the evacuation and instructions to remain indoors.

## II.    LEGAL STANDARD

### A.  Choice of Law

Because the Court hears this case pursuant to its diversity jurisdiction, 28 U.S.C. § 1332, it must apply state substantive law and federal procedural law.  Chaimberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000).  The choice-of-law rules of the forum state control in this case. Warriner v. Stanton, 475 F.3d 497, 499-500 (3d Cir. 2007).  Under New Jersey choice-of-law principles, there is a presumption that the law of the place of injury governs, unless another state has a more significant relationship to the parties and the issues.  P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 142-43 (2008).  Here, the parties point to no state other than New Jersey whose law would potentially apply to this matter; accordingly, we assume, as the parties have, that New Jersey bears the most significant relationship to the issues now before the Court.

### B.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted.  When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be

4

entitled to relief." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) (quoting <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 131 (quoting <u>Iqbal</u>, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  <u>Id.</u>

### III.    DISCUSSION

#### A.    Negligence Claim

Defendant argues that Plaintiff's claim in negligence should be dismissed because Plaintiffs have not pled the existence of a duty of care that Defendants owed to them.  They further argue for dismissal of the negligence count because they believe that Plaintiffs have not pled the heightened standard of foreseeability required when, as in this case, only economic damages are claimed.  These arguments are considered in turn.

##### 1.    Duty of Care

Defendants first argue that the negligence claim should be dismissed because Plaintiffs do not allege the existence of a duty of care, a necessary element of a negligence claim. Construing all facts in favor of Plaintiffs, the Court disagrees.

The lawsuit filed by the Plaintiffs alleges negligence on the part of Defendants.  In New Jersey, the elements of a cause of action for negligence are (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; (3) proximate cause; and (4) actual damages. Polzo v. County of Essex, 196 N.J. 569, 584 (2008).  To determine whether an alleged tortfeasor is liable for negligence, this Court must first determine whether Defendants owed a duty of care to Plaintiffs. The determination of whether a duty of care exists is "quintessentially a question of law for the court."  Highlands Ins. Co. v. Hobbs Grp., LLC, 373 F.3d 347, 351 (3d Cir. 2004). Under New Jersey law, the duty of care is "commensurate with the foreseeable risk" involved in the activity.  Eden v. Conrail, 175 N.J. Super. 263, 288 (App. Div. 1980); see also Strang v. South Jersey Broadcasting Co., 9 N.J. 38, 45 (1952) ("the measure of duty is care in proportion to the foreseeable risk").

The Complaint does not explicitly use the expression "duty of care."  However, in evaluating this motion, the Court must determine if the Complaint contains sufficient factual matter to state a plausible claim for relief.  Iqbal, 556 U.S. at 678.  The Court must assume the truthfulness of the factual allegations in making the determination as to whether such a plausible claim is stated.  Turning to this evaluation, the Complaint contains substantial factual matter related to the duties that Defendants allegedly breached.  For example, it alleges a failure to inspect, maintain and repair the bridge where the derailment took place.  (Compl. ¶ 38).  It further alleges a decision was made to have the train proceed over the bridge even though a red signal existed at the time of the crossing, and a failure to respond to prior malfunctions involving

the bridge.  Id.  It also alleges the failure to train personnel working for Defendant and the violation of federal and state statues.  Id.

The Court is not willing to parse the language in the complaint to the degree that Defendants wish.  While the cited allegations are strictly speaking, allegations of breaches of duty, and not of the duties themselves, implicit in each of these well-pleaded factual allegations is a duty of care.  In light of the alleged hazardous chemicals carried by the railroad cars, Defendants had a duty to those who reside or own property near the path of the railroad to inspect and maintain bridges, to take appropriate action when notified of any problems with its bridges, and to proceed across a bridge only when it is safe to do so.  The case cited by Defendants, where this Court dismissed a negligence claim under Rule 12(b)(6) where plaintiff did not "identify any duty . . . owed to Plaintiffs" is inapposite.  Graddy v. Deutsche Bank Trust Co. Ams., 2012 WL 762246 (D.N.J. Mar. 6, 2012).  In that case, the Court found that "as a matter of law, [the Defendant] owed no duty to Plaintiffs."  Id. at *6.  There is no basis for such a finding in the instant matter.  Under the liberal standard set out in Federal Rule of Civil Procedure 8(e), a federal court must construe pleadings "so as to do justice."  Construing the instant pleading in such a manner and drawing on "common sense," Iqbal, 566 U.S. at 679, the Court finds that Plaintiffs make a plausible showing that Defendants owed a duty to Plaintiffs.

## 2.    Economic Harm

The Plaintiff class is comprised of all residents of Gloucester County, New Jersey who were evacuated as a result of the release of chemicals and incurred economic loss as a result, all Gloucester County residents who suffered a loss of income as a result of the derailment and aftermath, and all Gloucester County businesses incorporated in New Jersey that had an income loss as a result.  The class does not include individuals with claims for personal injuries or

medical expenses.   Defendants argue that the claim should be dismissed because Plaintiffs have

not alleged facts suggesting that the economic damages were "particularly foreseeable."

      When solely economic damages are claimed, in addition to the elements that must be

present in all tort claims, the plaintiffs claiming economic damages must be of "an identifiable

class with respect to whom defendant knows or has reason to know are likely to suffer such

damages from its conduct."  People Express Airlines, Inc. v. Consol. Rail Corp., 100 N.J. 246,

263 (1985).  The class of plaintiffs affected must be "particularly foreseeable" by the defendant

"in terms of the type of persons or entities comprising the class, the certainty or predictability of

their presence, the approximate numbers of those in the class, as well as the type of economic

expectations disrupted."  Id. at 264.  In People Express, the New Jersey Supreme Court

explained that "members of the general public . . . or persons travelling on a highway near the

scene of a negligently-caused accident . . . [who] suffer varied economic losses" are foreseeable.

Id. at 266.  However, "their presence within the area would be fortuitous, and the particular type

of economic injury . . . unpredictable and not realistically foreseeable.  Id. at 266.

      In the People Express case, a railroad car leaked flammable gases that caused a fire in the

railroad's freight yard.  The plaintiff, a business located across the street from the freight yard,

brought suit for economic loss as a result of evacuations in the area.  The plaintiff's claim

survived summary judgment and was allowed to proceed to trial.  The court observed that the

plaintiff's operation of its business was obvious and the defendant had been aware of the

plaintiff's business and that it was in the evacuation area for certain freight yard accidents.

      Plaintiffs argue that the economic losses they sustained should be considered

"particularly foreseeable."  They plead that the Environmental Protection Agency has warned of

the dangers of exposure to vinyl chloride.  Compl. at ¶ 34.  Therefore, they argue that

evacuations and shelter-in-place orders affecting local residents would have been foreseeable to Defendants in the event of a spill.  The resulting consequences of individuals being unable to work and having to obtain alternate lodging, and businesses being unable to operate, they argue, is an obvious consequence of such shelter and evacuation orders.

The Court finds that People Express is inapposite to this case.  First, People Express was decided at the summary judgment stage, when the parties already had an opportunity to obtain discovery.  Here, Plaintiffs have not obtained discovery that might provide some factual basis as to how foreseeable Plaintiffs' damages were to Defendants.  Second, and more importantly, Plaintiffs meet all of the requirements for "particularly foreseeable" as announced in People Express.  The "type of persons or entities comprising the class" here consists of individuals and businesses whose residence or place of business is close to location of the spill.  Economic loss to such parties in the event of a major toxic chemical spill would have been "particularly foreseeable," if not nearly a certainty.  The same holds for "presence within the area."  Plaintiffs here are not members of the general public or fortuitous travelers that People Express indicated would not be sufficiently foreseeable.  Id. at 263.  Rather than being present only fortuitously, Plaintiffs' "presence within the area" was also a virtual certainty.  Defendant also had reason to know of the type of economic loss that would be suffered by Plaintiffs.  Shelter-in-place and evacuation orders leading to individuals missing work and businesses temporarily closing requires no leap in logic.  While the "approximate number" element is a closer question, the Court finds that this was also "particularly foreseeable."  The complaint alleges that approximately 200 homes were evacuated and other residents of the 2.2 square mile borough were ordered to remain inside their homes.  Compl. at ¶ 41-42.  The Complaint does not state

approximately how many individuals or business in total suffered economic loss.[2]  However, as the class is only comprised of physically near residents and businesses, the approximate effect of a chemical spill in the area of Paulsboro Bridge would have, or should have, been known to Defendants, who Plaintiffs allege owned and maintained the bridge over a lengthy period of time.

The parties disagree about the application of Rickards v. Sun Oil Co., a case that was cited with approval by the People Express court.  People Express, 100 N.J. at 264 (citing Rickard v. Sun Oil Co., 23 N.J. Misc. 89 (Sup. Ct. 1945)).  In Rickards, a barge negligently crashed into and destroyed a bridge that was the only point of passage for land travel between the New Jersey mainland and the City of Brigantine.  A number of businesses located on the island of Brigantine sued the owner of the barge for the business they lost as a result of the lack of vehicular accessibility to the island for a period of time.  The court decided the case on traditional proximate cause grounds, holding that the harm "was not the natural and proximate result of defendant's negligence."  Rickards, 23 N.J. Misc. at 92.  The People Express court used this case to illustrate that not all cases will be easily categorized, and at times "courts will be required to draw upon notions of fairness, common sense and morality to fix the line limiting liability as a matter of public policy. . . ."  People Express, 100 N.J. at 264.  However, this is not a case where proximate cause is at issue.  In Rickards, the loss was not a direct result of the negligent operation of the barge.  There were intervening factors involved in the plaintiffs' losses.  For example, the bridge in Rickards was the only means of car travel onto the island.  Rickards, 23

---

[2] The Court does note that contrary to Defendants' assertion that the proposed class "includes all residents and businesses in Gloucester County," (Def. Reply at 2-3), the operative complaint defines the class as all residents and businesses in Gloucester County who sustained income loss and expenses as a result of the chemical spill. Compl. ¶ 2.  Certainly the number of class members will amount to fewer than the entire population of Gloucester County of nearly 300,000 that Defendants suggest.

N.J. Misc at 94.  Here, the alleged negligent operation of the train was the direct and proximate cause of Plaintiffs' economic loss.  Defendants argue that the alleged negligent operation of the train merely caused the evacuation and shelter orders, and that these orders in turn caused Plaintiffs' losses.  However, Defendants fail to establish a sufficient intervening event, so that Plaintiffs' losses were not the "natural and proximate result" of the spill.  Rickards, 23 N.J. Misc. at 92.  The argument that the official evacuation and shelter orders are the direct cause of Plaintiffs' losses is misplaced.  Even if these orders had not been issued, Plaintiffs would have likely suffered the same degree of harm merely by acting out of reasonable caution in avoiding exposure to the hazardous materials that were released.  Therefore, the motion to dismiss on grounds of foreseeability must be denied.

### B.     Res Ipsa Loquitor

Plaintiffs included a count in their complaint for res ipsa loquitor. This doctrine is a burden-shifting principle, and not a stand-alone cause of action.  Fassbinder v. Pa. R.R. Co., 322 F.2d 859, 863 (3d Cir. 1963).  Plaintiffs now acknowledge that this is the case, and offer to voluntarily withdraw it.  However, Plaintiffs request that the res ipsa loquitor language be "deemed incorporated with the Negligence count," as they intend to rely on the doctrine.  (Pl. Opp'n at 8).  This Court can only rule on the instant motion before it, which challenges the sufficiency of the operative complaint.  The Court cannot amend the pleadings as part of its ruling on this motion. Because Count II does not state a viable cause of action, it will be dismissed.

### C.     Trespass

### 1.  Requisite State of Mind

11

Defendants move to dismiss the count alleging trespass damages because Plaintiffs failed to plead an intentional, rather than negligent, intrusion on the property of another.  They argue that a claim in trespass requires intentional conduct, and because the release of vinyl chloride was not intended by Defendants, the claim must be dismissed.  On the other hand, Plaintiffs argue that New Jersey law recognizes a cause of action for "Negligent Trespass."  The issue, therefore, is whether, in the absence of controlling precedent by the New Jersey courts, this Court will require a showing of intent to state a cause of action in trespass, or if mere negligence will suffice.

The Second Restatement of Torts ("Restatement") § 165, provides that "[o]ne who recklessly or negligently . . . enters land in the possession of another or causes a thing or third person so to enter" will be subject to liability for resulting damage.  Plaintiffs point out that New Jersey courts frequently cite, and have generally accepted the Restatement.  See, e.g., Burke v. Briggs, 571 A.2d 296, 297 (N.J. Super. App. Div. 1990).  Plaintiffs also cite a New Jersey federal court that allowed a negligent trespass claim to proceed.  Phoenix Pinelands Corp. v. United States, 2010 WL 1704743, at *5 (D.N.J. Apr. 23, 2010).  That court acknowledged that the New Jersey courts have not addressed "the question as to whether New Jersey recognizes a cause of action for negligent trespass," and applied the position of the Restatement, citing Burke for the suggestion that New Jersey would recognize negligent trespass, given the opportunity. Id.  Plaintiffs also cite cases from a number of other jurisdictions that have recognized the tort of negligent trespass.  Defendants, on the other hand, cite federal cases applying New Jersey law that have dismissed claims or granted summary judgment where an alleged trespasser acted only negligently, and not intentionally.  See Jersey City Redevelopment Auth. v. PPG Indus., Inc., 655 F. Supp. 1257, 1264 (D.N.J. 1987).

Defendants argue that when there are "competing yet sensible interpretations" of state law, federal courts should choose the "interpretation that restricts liability, rather than expands it," until the New Jersey Supreme Court decides the issue.  Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 253 (3d Cir. 2010).

The Court observes that aside from the two approaches advocated by the parties, some courts have taken a middle ground as to the mental state required for trespass.  This approach requires intentional conduct as to the act causing the trespass, but not intent as to the result.  See City of Bloomington v. Westinghouse Elec. Corp., 891 F.2d 611, 615 (7th Cir. 1989) ("it is not necessary that the trespasser intend to commit a trespass.  Rather . . . it is required for trespass that there be an intentional act and an intent to do the very act which results in the trespass."); Berenger v. 261 West LLC, 940 N.Y.S.2d 4, 10 (1st Dep't 2012) ("Trespass does not require an intent to produce the damaging consequences, merely intent to perform the act that produces the unlawful invasion").  There is some authority in New Jersey for this approach.  See Rutgers Univ. v. Liberty Mutual Ins. Co., 277 N.J. Super. 571, 579 (App. Div. 1994) ("although . . . allegations of trespass . . . may require proof of intentional conduct, the inquiry does not require [the plaintiff] to prove that the damage flowing from that conduct was subjectively intended).

Given the uncertain requirement as to mental state to bring a common law claim in trespass, this Court would be reluctant to expand trespass liability beyond what the New Jersey courts have announced.  From the arguments of the parties, it does not appear that any entry of chemicals onto the property of Plaintiffs was intentional, nor that any intentional act of Plaintiffs directly resulted in chemicals entering Plaintiffs' property.  Because of the Court's findings with respect to the "tangible impact" requirement (discussed infra in part III.C.2) as to the tort of trespass, it is not necessary to reach a conclusion as to the question of state of mind.

### 2. Tangible Impact

At common law, "[t]respass constitutes "the unauthorized entry (usually of tangible matter) onto the property of another."  Rowe v. E.I. Duport De Nemours & Co., 262 F.R.D. 451. 463 (D.N.J. 2009).  Defendants observe that New Jersey has moved away from "such common law claims as trespass and nuisance" in environmental pollution cases.  Mayor and Council of Borough of Rockaway v. Klockner & Klockner, 811 F. Supp. 1039, 1053 (D.N.J. 1993); Kenney v. Scientific, Inc., 204 N.J. Super. 228, 256 (1985).  Defendants argue that the entry of airborne particulates alone does not support a trespass claim.  They cite cases from jurisdictions that have allowed negligent trespass claims to proceed, but reject claims where the intrusion is merely in the form of smoke or airborne particulates.  See Adams v. Cleveland-Cliffs Iron Co., 237 Mich. App. 51, 54 (1999) (dust particles from an iron ore mine); Larkin, Inc. v. Marceau, 184 Vt. 207, 214 (2008) (pesticide spray).  Plaintiffs argue that the cloud caused by the release of the vinyl chloride constituted a tangible invasion and thus is sufficient to state a trespass claim.  They too, cite law that they believe supports their respective position.

Plaintiff cites cases where federal courts have found that a "tangible object" exists so as to constitute a trespass, and argues that the vinyl chloride cloud was "more dangerous" (Pl. Opp'n at 13) than the objects in those cases.  In Smith v. Honeywell Int'l, Inc., 2011 WL 810065 (D.N.J. Feb. 28, 2011), the Court found that allegations that chromium deposits were released onto Plaintiff's land was sufficient to overcome a motion to dismiss.  Id. at *4.  In Phoenix Pinelands Corp. v. United States, 2010 WL 1704743 (D.N.J. Apr. 26, 2010), the court found that a trespass existed when F-16 fighters dropped flares onto the plaintiff's land.  Id. at *5.  Whether or not the vinyl chloride released in Paulsboro was more dangerous than flares or chromium is not of consequence, however.  The test for a trespass is not one of degree of danger.  Plaintiffs

14

have not pled that any member of the putative class has suffered from the invasion of a tangible object onto his or her property.  The allegation of vinyl chloride gas in the air is not sufficient to state a cause of action in trespass, nor is the vague allegation that Plaintiffs' properties have been invaded by "harmful substances that have contaminated their properties, buildings, and the surrounding surface and subsurface areas."  Compl. at ¶ 69.

Furthermore, modern courts do not favor trespass claims for environmental pollution.  A recent District of New Jersey Court "found that use of trespass liability for [environmental pollution] has 'been held to be an inappropriate theory of liability' and an 'endeavor to torture old remedies to fit factual patterns not contemplated when those remedies were fashioned.'" Woodcliff, Inc. v. Jersey Const., Inc., 900 F. Supp. 2d 398, 402 (D.N.J. 2012) (quoting Preferred Real Estate Investments, Inc. v. Edgewood Properties, Inc., 2007 WL 81881 (D.N.J. Jan. 9, 2007).

For these reasons, the Court dismisses Plaintiffs' count for trespass.

### D.  Strict Liability

The arguments for dismissal of Plaintiff's strict liability count and the responses thereto are substantially similar to those advanced in another case involving the derailment in Paulsboro, Hamilton v. Consol. Rail Corp., Civ. No. 13-3724.  For the reasons stated in the Court's opinion of this date in the Hamilton matter, Count VI of Plaintiff's complaint, for strict liability, will be dismissed with prejudice.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED** as to Count I, and **GRANTED** as to Counts II, III, and VI, which will be dismissed with prejudice.  An appropriate Order shall enter.

Dated: 10/4/2013                                    /s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge