<u>NOT FOR PUBLICATION</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

———————————————————
            :
IN RE PAULSBORO          :
DERAILMENT CASES       :
            :      Civil No. 13-784 (RBK/KMW)
            :
            :
            :
            :
            :
            :
———————————————————
            :
DONALD WILSON, et al.,    :
            :
       Plaintiffs     :      Civil No. 12-7586 (RBK/KMW)
            :      (Doc. Nos. 53, 64)
      v.          :
            :
CONSOLIDATED RAIL     :
CORPORATION, et al.,     :
            :
      Defendants.   :
———————————————————
            :
KATHLEEN A. POLLICINO, et al.,  :
            :
       Plaintiffs     :      Civil No. 12-7648 (RBK/KMW)
            :      (Doc. Nos. 39, 49)
      v.          :
            :
CONSOLIDATED RAIL     :
CORPORATION, et al.,     :
            :
      Defendants.   :
———————————————————
            :
OWEN HAYNES, et al,     :
            :
       Plaintiffs,    :      Civil No. 13-410 (RBK/KMW)
            :      (Doc. Nos. 36, 45)

|  |  |  |
|---|---|---|
| v. | : | |
| | : | |
| CONSOLIDATED RAIL | : | |
| CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |
| JOHN STEPHENSON AND TRACY | : | |
| LEE, et al., | : | |
| | : | |
| Plaintiffs | : | Civil No. 13-721 (RBK/KMW) |
| | : | (Doc. Nos. 45, 59) |
| v. | : | |
| | : | |
| CONSOLIDATED RAIL | : | |
| CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |
| | : | |
| DONALD WILSON, D/B/A DON'S | : | |
| BARBERSHOP, | : | |
| | : | |
| Plaintiff, | : | Civil No. 13-761 (RBK/KMW) |
| | : | (Doc. Nos. 23, 32) |
| v. | : | |
| | : | |
| CONSOLIDATED RAIL | : | **OPINION** |
| CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**KUGLER**, United States District Judge:

Before the Court is the motion for class certification filed by the plaintiffs in this putative class action. Plaintiffs in this case incurred expenses or loss of income as a result of orders to evacuate and to shelter indoors when a train derailed and released toxic chemicals in Paulsboro, New Jersey on November 30, 2012. Plaintiffs seek to represent a putative class of individuals and business who sustained economic losses as a result of the derailment. Defendants also have

moved to seal some documents that were submitted in opposition to the motion for class certification.  For the reasons that follow, Plaintiffs' motion will be **DENIED**.  The motion to seal will be **GRANTED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

On November 30, 2012, a train derailed as it crossed over a bridge that passes over Mantua Creek in Paulsboro, New Jersey.  (Second Consolidated Class Action Amended Complaint ("Sec. Am. Compl.") ¶ 13.)  Consolidated Rail Corporation, Norfolk Southern Railway Company, and CSX Transportation, Inc. ("Defendants") owned and operated the train involved in the derailment, and also owned and maintained the bridge over Mantua Creek.  (Id.)  The bridge is a "swing bridge" which may be manipulated to either allow watercraft to pass through along the creek, or, conversely, to permit rail traffic to proceed over the bridge.  (Id. ¶ 15.)  The train crew allegedly disregarded a signal indicating that the bridge was not properly locked in place to safely accommodate rail traffic.  (Id. ¶ 25.)  As a result of the derailment, four tank cars fell off the bridge into Mantua Creek.  (Id. ¶ 28.)  At that time, at least one of the derailed tank cars was carrying vinyl chloride or other "dangerous substances."  (Id. ¶ 30.)  As a result, vinyl chloride was released from the railcar into both the water and the atmosphere.  (Id. ¶ 30.)  Shortly thereafter, the surrounding area became contaminated with airborne chemicals.  (Id. ¶ 31.)  Many of those living or located in the surrounding areas were instructed to either evacuate or to "shelter in place."  (Id. ¶ 39.)

The initial mandatory evacuation zone encompassed a twelve-block area.  (Id. ¶¶ 40, 41.)  On December 4, 2012, the evacuation order was expanded to include an additional 100 homes.  (Id.)  Other residents outside the mandatory evacuation zone, but still deemed to be in dangerously close proximity to the accident site, were instructed to remain in their homes and

seal all doors and windows until it was deemed safe to do otherwise.  (Id. ¶ 42.)  The first

evacuees were permitted to return to their homes on December 7, and the evacuation order was

gradually lifted between then and December 14, 2012.  (Certification of James A. Barry ("Barry

Cert.") Ex. F.)  Further, the entire population of Paulsboro was subject to orders to shelter in

place on November 30, December 3, and December 4, 2012, and some residents of West

Deptford, New Jersey were ordered to shelter in place on November 30, 2012.  (Barry Cert Ex.

G.)  The shelter-in-place order meant that residents were not supposed to leave their places of

residence for any reason.  (Id.)

Plaintiff Donald Wilson initiated a putative class action eleven days after the derailment,

asserting theories of negligence and recklessness against Defendants.  See Civ. No. 12-7586.

Other plaintiffs also filed putative class actions shortly thereafter.  See Civ. Nos. 12-7648; 13-

410; 13-721; 13-761.  These cases were later consolidated, and Plaintiffs filed a consolidated

class action complaint, which has since been amended.  See Civ. No 13-784, ECF Doc. Nos. 59,

78.  In the Second Consolidated Class Action Amended Complaint, which is now operative, the

only named plaintiffs are Donald Wilson, individually and doing business as Don's Barbershop,

and Tracy Lee.  (Sec. Am. Compl. ¶ 2.)

On November 22, 2013, Defendants filed a motion to strike the class allegations, which

was denied pursuant to an Order and Opinion issued on April 8, 2014.  See Civ. No. 13-784,

ECF Doc. No. 400.  Plaintiffs have moved for class certification, and the motion has been fully

briefed and is ready to be decided.

## II. LEGAL STANDARD

### A.  Class Certification

In order to qualify for class certification under Federal Rule of Civil Procedure 23, a

plaintiff must satisfy the four elements set out in Rule 23(a) and the requirements of one of the three subsections in Rule 23(b).  See In re Constar Int'l Inc. Sec. Litig., 585 F.3d 774, 780 (3d Cir. 2009).  Rule 23(a) provides that class certification is proper if:

  (1) the class is so numerous that joinder of all members is impracticable;

  (2) there are questions of law or fact common to the class;

  (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

  (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Plaintiffs in this case seek certification pursuant Rule 23(b)(3), which provides that a class may be certified if:

  the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:

  (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

  (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

  (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

   A plaintiff bears the burden of demonstrating that Rule 23's requirements are met by a preponderance of the evidence, and the district court "must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties."  In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 306 (3d Cir. 2008).  Thus, a

district court should certify a class "only if the court is 'satisfied, after a rigorous analysis, that the prerequisites of Rule 23[] have been satisfied.'" Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d Cir. 2006) (quoting Gen. Tel. Co. Sw. v. Falcon, 457 U.S. 147, 161 (1982)).

All of the class certification requirements are intended to serve as "guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997) (internal citations omitted).

In addition to Rule 23's explicit requirements, there are also implicit requirements for class certification. "Class certification presupposes the existence of an actual 'class.'" White v. Williams, 208 F.R.D. 123, 129 (D.N.J. 2002) (citing In re Sch. Asbestos Litig., 56 F.3d 515, 519 (3d Cir. 1995)). A "proposed class must be sufficiently identifiable without being overly broad." Id. It "may not be 'amorphous, vague, or indeterminate' and it must be 'administratively feasible to determine whether a given individual is a member of the class.'" Id. (quoting Mueller v. CBS, Inc., 200 F.R.D. 227, 233 (W.D. Pa. 2001)).

The burden is on the party seeking class certification to "affirmatively demonstrate his compliance with" Rule 23. Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). The moving party must "be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Id. (emphasis in original). Certification "is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" Id. (citing Falcon, 457 U.S. at 161).

**B. Motion to Seal**

Local Civil Rule 5.3 governs requests to seal documents filed with the Court. Under

6

Rule 5.3(c)(2), a party seeking to seal documents must show: (1) the nature of the materials at issue; (2) the legitimate private or public interests which warrant the relief sought; (3) the injury that would result if the relief sought is not granted; and (4) why a less restrictive alternative to relief sought is not available.  In turn, any order or opinion on a motion to seal must make findings as to those factors.  L. Civ. R. 5.3(c)(5).  Additionally, where a party moves to seal pretrial motions of a "nondiscovery nature, the moving party must make a showing sufficient to overcome a 'presumptive right of public access.'"  Leucadia v. Applied Extrusion Tech., Inc., 998 F.2d 157, 164 (3d Cir. 1993).  To overcome that presumption, a party must demonstrate that "good cause" exists for the protection of the material at issue.

Good cause exists when a party makes a particularized showing that disclosure will cause a "clearly defined and serious injury to the party seeking closure."  Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994) (citations omitted); see Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995).  A party does not establish good cause by merely providing "'broad allegations of harm, unsubstantiated by specific examples of articulated reasoning.'"  Pansy, 23 F.3d at 786 (quoting Cipollone v. Liggett Grp., 785 F.2d 1108, 1121 (3d Cir. 1986)).  The moving party must make this good cause showing with respect to each document sought to be sealed.  Id. at 786-87.

## III. DISCUSSION

### A.  The Proposed Classes

Plaintiffs have proposed two sub-classes.  The first, the "Economic Loss Sub-Class Regarding Evacuation," designated as Sub-Class A, includes:

all individuals who resided in Paulsboro on November 30, 2012, and all individuals who resided in one section of West Deptford (defined by the attached documents and aerial photographs/maps and defendants' admissions) on November 30, 2012.  Of course, they

also must have evacuated their place of residence as a result of the train derailment and chemical spill in Paulsboro on November 30, 2012, and as a result had unreimbursed non-medical expenses.

Pl.'s Mot. Certify at 9.

The second proposed sub-class is the "Economic Loss Sub-Class Regarding Income Loss," which is divided into two further sub-classes. The first of these, designated as Sub-Class B(1), includes:

all individuals who resided in Paulsboro on November 30, 2012 and all individuals who resided in one section of West Deptford (defined by the attached documents and aerial photographs/maps and defendants' admissions) on November 30, 2012. Of course, they also must have had income loss as a result of the train derailment and chemical leak in Paulsboro on November 30, 2012, as a result of sheltering in place.

Id. at 9. Proposed Sub-Class B(2) includes:

all businesses physically located in Paulsboro on November 30, 2012, and all businesses physically located in one section of West Deptford (defined by the attached documents and aerial photographs/maps and defendants' admissions) on November 30, 2012. Of course, they also must have had income loss as a result of the train derailment and chemical leak in Paulsboro on November 30, 2012. If incorporated, they must have been incorporated in the State of New Jersey.

Id. at 9-10.

## B. Ascertainability

In addition to the explicit prerequisites of Rule 23(a), courts must also address as preliminary matters: (1) whether the class is clearly defined, and, if so, (2) whether it is objectively ascertainable. Carrera v. Bayer Corp., 727 F.3d 300, 305 (3d Cir. 2013). Classes are not ascertainable when "class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials.'" Id. at 303-04 (citing Marcus v BMW of N. Am., LLC, 687 F.3d 583, 593 (3d Cir. 2012)). Rather, "the class must be currently and readily ascertainable based on objective criteria." Marcus, 687 F.3d at 593.

Ascertainability must be established "so that it will be clear later on whose rights are merged into the judgment," as otherwise, "satellite litigation will be invited over who was in the class in the first place." Marcus, 687 F.3d at 593 (internal citations omitted). Thus, testing a putative class action for ascertainability "serves several important objectives:" (1) it eliminates administrative burdens that would run counter to the intended efficiency of class actions in general; (2) it serves to protect absent class members by ensuring that "the best notice practicable" can be provided to class members; and (3) it protects defendants by clearly identifying those who will be bound by the final judgment. Id.

Three recent Third Circuit cases, each in the context of a product liability class action, have refined the standard for what plaintiffs must show in order to satisfy the ascertainability requirement. In the first case, Marcus v. BMW of North America, LLC, the Third Circuit questioned the ascertainability of a class that a district court certified, made up of automobile purchasers whose vehicles came with a particular kind of "run-flat tires," which had "gone flat and been replaced." 687 F.3d at 592. The court observed that BMW did not keep records of which cars were fitted with the tires, and because some customers who had experienced flat tires would have replaced them somewhere other than at a dealership, neither BMW nor the plaintiff would have any way to know of all of the customers who had experienced flat tires, aside from them being a subset of all BMW purchasers during the relevant time period. Id. at 593-94. The Third Circuit also rejected the idea that simply having vehicle owners "submit affidavits that their [run-flat tires] have gone flat and been replaced" would be sufficient for ascertaining class membership because it would be based only on "potential class members' say so." Id. at 594.

In Carrera v. Bayer Corp., the Third Circuit, relying on Marcus, vacated the certification of a class defined as all consumers who bought a particular dietary supplement in Florida. 727

9

F.3d at 304.  The court found that the plaintiffs had not demonstrated ascertainability because there was no evidence that retailers maintained records of customers who purchased the supplement, and because the plaintiffs had not shown that proving class membership through affidavits would be reliable or that a model existed for screening the affidavits.  Id. at 308-11. However, Carrera left open the door to certification if the plaintiff could submit a model for screening class members and show that it would be reliable and would "allow Bayer to challenge the affidavits" of potential class members.  Id. at 311.

Finally, Hayes v. Wal-Mart Stores, Inc., vacated the certification of a class of consumers who had purchased extended warranties for as-is products that were excluded from coverage under the warranties' service plan.  725 F.3d 349, 352 (3d Cir. 2013).  The class members were a subset of a larger pool of 3,500 customers who had completed retail transactions involving a manual override of the price of an item.  Id. at 355.  The defendant had no method of determining which price overrides were for as-is items, and the district court "reasoned that plaintiff should not be hindered from bringing a class action because defendant lacked certain records."  Id.  The Third Circuit, relying on Marcus, found that "the nature or thoroughness of a defendant's recordkeeping does not alter the plaintiff's burden to fulfill Rule 23's requirements." Id. at 356.  On remand, the court observed that to adequately demonstrate ascertainability, the plaintiffs would have to show a reliable and administratively feasible method of determining whether a customer purchased an extended warranty for an as-is item, whether it came with a manufacturer's warranty, and whether the customer actually received service on the as-is item or a refund of the extended warranty cost.  Id.  It is on this trio of recent Third Circuit cases that Defendants rely, in particular upon the general prohibition against certifying putative classes where "the only proof of class membership is the say-so of putative class members."  Id.

Defendants argue that the proposed sub-classes in this case are not ascertainable because membership is defined to include more than mere residence in the affected areas.  Under Plaintiffs' proposed class definitions, unreimbursed expenses or income loss resulting from the derailment is also required.  Defendants argue that no complete, reliable record of all evacuees exists, nor is there an independent method of verifying whether individuals and business actually suffered lost income, although they may have addresses within the well-defined affected areas. They thus argue that membership would have to be based on the forbidden "say-so" of class members.

The Court finds that each of the proposed classes of individuals are ascertainable.  The controlling requirement is not that <u>no</u> fact-finding be necessary, but that <u>extensive</u> individualized fact-finding cannot be required if a class is to be readily ascertainable.  <u>Marcus</u>, 687 F.3d at 593. First, both the evacuation zone and the shelter-in-place zone have well-defined geographical boundaries, and those who reside in those areas can be ascertained through public records such as tax and census records.  Further, whether a putative class member incurred expenses or lost income due to obeying the evacuation and shelter orders is an objective inquiry that can be answered by asking each one "a single question to determine whether they are entitled to relief." <u>Wilkerson v. Bowman</u>, 200 F.R.D. 605, 610 (N.D. Ill. 2001).  This is hardly the type of extensive individualized fact-finding that renders a class definition insufficient.  <u>See also</u> <u>Tourgeman v. Collins Fin. Servs., Inc.</u>, Civ. No. 08-1392, 2011 WL 5025152, at *7 (S.D. Cal. Oct. 21, 2011) (finding a class may be ascertainable although it is defined to include persons who "paid money or incurred expenses" because the inquiry involved does not require extensive factfinding).

Neither is "the only proof of class membership . . . the say-so of putative class members."

Hayes, 725 F.3d at 356.  The proposed sub-classes contemplate that class members will have some documentation of their expenses or income loss.  See Pl.'s Mot. Certify at 26.  By asking all residents of the evacuation and shelter-in-place zones, respectively, a single question and requesting at least one document showing out-of-pocket expenses or income loss, membership can be ascertained without extensive individualized fact-finding and without relying on the "say-so" of class members.  Further, such a method would allow the defendants to challenge class membership.  Carrera, 727 F.3d at 308-09.  Thus, Plaintiffs propose ascertainable sub-classes with respect to sub-class (A) and sub-class (B)(1), which are the sub-classes made up of individuals.

With respect to proposed sub-class (B)(2), which is made up of businesses, the Court finds that Plaintiffs have not defined an ascertainable class.  This sub-class includes potential class members who (1) were physically located within a defined zone; (2) if incorporated, are incorporated in the state of New Jersey; and (3) suffered income loss; that (4) was a result of the derailment.  Significant individualized fact-finding would be required to show that a potential class member satisfies all of these elements of Plaintiffs' class definition.

Plaintiffs have offered no administratively feasible method of determining which businesses are class members.  They have complied a "preliminary list," using a computer database, of 381 business that have mailing addresses within the defined geographic boundaries. (See Report of Patricia T. Domzalski ("Domzalski Report"), Barry Cert. Ex. H.)  However, the existence of injury must be established by an administratively feasible means, and Plaintiffs have not shown how this would occur.  They have not proposed how to determine whether each of these business actually had physical operations in the evacuation or shelter-in-place zones, or of these, which ones actually suffered income loss.

12

The businesses located in the shelter-in-place zone, but outside of the evacuation zone, would have been subject to an official order for three days, at most.  While for the class representative, a barbershop, it is intuitive that the business relies upon a physical presence to generate revenue, it is not so clear that all 381 businesses with mailing addresses in the shelter-in-place zone have a similar business model.  The Court cannot simply assume that each business organization with an address in a specified geographic area suffered income loss as a result of not being able to have its doors open to the public or to employees for a period of three days.  It is not clear that many of the businesses on the preliminary list generate any income at all through operations in the affected area.  A number of the listings appear to simply be the names of individual persons, which would appear to leave open the question of how they generate income, and whether they suffered income loss merely due to having an address in the affected area.  (See Domzalski Report Ex. D.)

Further, even assuming that Plaintiffs could articulate a method of determining which of these businesses meet the class description of being "physically located" in the affected area, they have not set forth any reliable method of determining which ones sustained income loss.  For example, Defendants point out that among the businesses on the preliminary list that appear to have physical operations in the evacuation or shelter zones, it is not obvious that all of them lost income.  For example, it is not clear that the three funeral homes on the list would have sustained income loss if no funerals were scheduled to be held there on the days the shelter-in-place order was in effect.[1]  It is also likely that some businesses are seasonal in nature, and may not normally generate any income in late November or early December.[2]  Plaintiffs have offered

---

[1] Plaintiffs' preliminary list of businesses includes Adams Stiefel Funeral Home, Landolfi Funeral Home, and McBride-Foley Funeral Home.  (Domzalski Report Ex. D.)

[2] For example, one of the businesses on the preliminary list is named "Gezzi's Water Ice," another "Caspers

no administratively feasible way to determine whether each of these businesses sustained income loss resulting from the derailment or not.

Plaintiffs attempt to satisfy the ascertainability requirement through a supplemental affidavit from their expert, which was submitted with their reply brief.  The report asserts that "the individual data elements require very minimum verification, including operating status, which will take place during the claims administration process."  (Affidavit of Patricia T. Domzalski ("Domzalski Aff.") at 3, Certification of James J. Pettit Ex. O.)  She indicates that she "saw no reason to exclude any particular entity at this time."  (Id. at 4.)  However, the Court must not confuse damages determinations with class membership, which is a showing that a potential member meets the class definition in the first place.  Under the recent line of Third Circuit cases, a plaintiff must show that "the class is 'currently and readily ascertainable based on the objective criteria.'"  Carrera, 727 F.3d at 306 (citing Marcus, 687 F.3d at 593) (emphasis added).  Thus, a showing that class members can be ascertained after trial at the claims administration phase will not suffice.  The Court finds that unlike the individual sub-classes, a significant amount of individual factfinding would be required merely to determine whether each business meets the class definition.

## C.  Rule 23(a) Factors[3]

### 1. Numerosity

The first Rule 23(a) factor is that of numerosity, which is defined as a "class . . . so

---

Swimming Pool Svc," and five have "landscaping" in the name of the business.  (See Domzalski Report Ex. D.)
[3] Although the Court has found that the business income loss sub-class cannot be certified on the basis of ascertainability, the Court will consider the Rule 23(a) factors as well, as Rule 23(a) establishes an independent basis for denial of class certification of this sub-class.  See Richburg v. Palisades Collection LLC, 247 F.R.D. 457, 462 (E.D. Pa. 2008) (discussing each of the Rule 23(a) factors although the Court had already determined that denial of class certification was appropriate); Bright v. Asset Acceptance, LLC, 292 F.R.D. 190, 198 (D.N.J. 2013) (addressing Rule 23(a) factors although ascertainability was not satisfied, "in the interest of thoroughness").

numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

Impracticability of joinder does not only relate to the estimated number of parties in the proposed

class, but also "the expediency of joinder, and the practicality of multiple lawsuits." Cannon v.

Cherry Hill Toyota, Inc., 184 F.R.D. 540, 543 (D.N.J. 1999).

      A party seeking class certification need not specify the exact number of members or

identify each class member to proceed as a class action. In re Lucent Tech. Inc., Sec. Litig., 307

F. Supp. 2d 633, 640 (D.N.J. 2004). "No minimum number of plaintiffs is required to maintain a

suit as a class action, but generally if the named plaintiff demonstrates that the potential number

of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Stewart v. Abraham, 275

F.3d 220, 226-27 (3d Cir. 2001). A court's finding of numerosity must be based on "adequate

admissible evidence," and not on "unsubstantiated hypotheticals or self-serving bold assertions."

In re FleetBoston Fin. Corp. Sec. Litig., 253 F.R.D. 315, 340 (D.N.J. 2008) (citing Falcon, 457

U.S. at 160-61). Thus, particularly when the parties have completed their factual discovery and

have the benefit of a full record, a "searching" and "rigorous" analysis must be performed by the

court as to the numerosity requirement. Id.

      As Defendants challenge certification on the basis of numerosity, the Court will consider

the evidence as to this requirement separately with respect to each proposed sub-class.

      a.  Evacuation Sub-Class

      Plaintiffs have produced evidence indicating that approximately 680 Paulsboro residents

lived in the evacuation zone and were evacuated at some point in the aftermath of the derailment.

(See Barry Cert. Ex. C (New Jersey State Emergency Operations Center Memorandum dated

December 5, 2012, indicating that "680 individuals have been evacuated")).[4]  On this basis, they argue that the presumption of numerosity should apply.  However, this Court may not merely infer that each evacuee is a class member, as this would amount to an "unsubstantiated hypothetical." FleetBoston, 253 F.R.D. at 340.  Rather, the Court must engage in "rigorous analysis" based upon the evidence developed through discovery, even though such analysis may "overlap with the merits of the plaintiff's underlying claim." Dukes, 131 S. Ct. at 2551.  In order to comply with the numerosity requirement, Plaintiff must demonstrate by a preponderance of the evidence that the class is "in fact sufficiently numerous" that joinder is impractical. Id.

Defendants have demonstrated that they reached settlements with 486 evacuees. (Affidavit of Robert A. Wells ("Wells Aff.") ¶ 20, Certification of Alison C. Finnegan ("Finnegan Cert.") Ex. A.)  Further, 45 evacuees have filed their own actions in connection with the derailment.  (Finnegan Cert. Ex. O.)[5]  These 531 evacuees cannot be part of the Evacuation Sub-Class, and Plaintiffs have not demonstrated how many, if any, of the remaining evacuees have unreimbursed non-medical expenses.[6]  Not only have Plaintiffs failed to produce any

---

[4] Defendants indicate in their brief that "between 600 and 700 individuals were evacuated." Defs.' Opp'n at 3. Defendants cite to the affidavit of Robert A. Wells, a claims manager for Norfolk Southern Corporation, who indicates that "just fewer than 700" persons were evacuated in total." (Affidavit of Robert A. Wells ¶ 5, Certification of Alison C. Finnegan Ex. A.)  The Court assumes that this indicates agreement with the 680 total relied upon by Plaintiffs.

[5] Defendants indicate in their sur-reply brief that in the time between the filing of their opposition brief and their sur-reply brief, more than 260 additional individuals who lived in the evacuation or shelter-in-place zones joined separate lawsuits.  See Defs.' Sur-Reply at 4 n.3.  Because there is no affirmative showing of their identities, or how many are from the two respective zones, the Court assumes for the purposes of this motion that the numbers set forth in the opposition brief and accompanying exhibits are accurate.  Defendants have also submitted an exhibit consisting of a multitude of letters of representation from attorneys representing individuals who have indicated an intention to pursue claims, but have not filed suit.  (Finnegan Cert. Ex. P.)  While the Court did not count the letters of representation, Defendants represent that over 1,330 potential plaintiffs who may yet file individual actions are included therein.

[6] Plaintiffs suggest that the 45 evacuees with individual actions for personal injuries can also be members of the putative class in this action to recover for their economic losses.  Pl.'s Reply at 18.  The Court disagrees.  The First Circuit has found that a class action judgment "does not resolve any claim based on individual circumstances that was not addressed in the class action." See In re Vitamin C Antitrust Litig., 279 F.R.D. 90, 114-15 (E.D.N.Y. 2012) (citing Cameron v. Tomes, 990 F.2d 14, 17 (1st Cir. 1993)).  However, other courts of appeals have limited this

evidence showing how many of the remaining residents meet the class definition, but evidence exists suggesting that some remaining residents would not be class members.  Defendants established an assistance center in Paulsboro, where evacuees could obtain reimbursement for expenses as well as gift cards for future expenses, without signing releases.  (Wells Aff. ¶¶ 8-12.)  In fact, named plaintiffs Wilson and Lee availed themselves of this process, and obtained reimbursement for all expenses they submitted to the assistance center in the days following the derailment.[7]  Mr. Wilson acknowledged that all reimbursement requests submitted by his family were paid, totaling over $4,000.  (Deposition of Donald Wilson at 24:7-25:10, Finnegan Cert. Ex. F.)  Similarly, Mr. Lee received over $2,000 in reimbursements and gift cards from the assistance center, and acknowledged that all reimbursement requests submitted by he and his family were honored.  (Deposition of Tracy Lee at 25:11-26:22, Finnegan Cert. Ex. L.)

Based upon the estimated figure of 680 evacuees, Plaintiffs have not produced any evidence of how many of the remaining 149 evacuees who have not settled a claim with defendants or joined an action as a plaintiff have sustained unreimbursed non-medical expenses.  Thus, there is no basis for the Court to infer that at least forty of them meet the class definition.  The Third Circuit has rejected an approach to numerosity where a larger population is identified,

---

doctrine to cases where the class action seeks "only declaratory or injunctive relief."  Id. (citing Hiser v. Franklin, 94 F.3d 1287, 1291 (9th Cir. 1996).  Although it appears that the Third Circuit has not squarely addressed this issue, language from one case suggests that it would consider allowing an individual to be a party to both actions to be improper claim-splitting.  See Nafar v. Hollywood Tanning Sys., Inc., 339 F. App'x 216, 224 (3d Cir. 2009) (asserting separate claims for "economic harm and harm in the form of personal injury," arising from the same set of facts, appears to be "claim-splitting, which is generally prohibited by the doctrine of res judicata").  But even if this Court were to follow the First Circuit's approach, Plaintiffs have not pointed to any court that has found such an exception to the usual prohibition against claim-splitting that works in the reverse, where an individual action was litigated prior to a class action.  Additionally, since the numerosity requirement addresses the practicality of individual lawsuits, the fact that these persons have in fact instituted their own actions indicates that in their cases, joinder is practical.  In any event, for the reasons discussed in this section, the Court's numerosity determination does not turn only on whether these 45 individuals could be class members or not.

[7] Both Wilson and Lee claim that they incurred additional expenses for which they were not reimbursed, although neither was able to point to documentation of these alleged expenses.

17

of which the proposed class makes up some uncertain portion of that larger population.  See Hayes, 725 F.3d at 358 (finding that "where a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone").

Plaintiffs argue that "common sense" dictates that a sufficient subset of the remaining residents of the evacuation zone meet the class definition, and cite some law in support of this approach.  See In re Bulk Graphite Prods. Antitrust Litig., Civ. No. 02-6030, 2006 WL 891362, at *5 (D.N.J. Apr. 4, 2006) ("A court may accept common sense assumptions in finding that numerosity has been met.") (internal citations omitted); Frank v. Gov't of Virgin Islands, Civ. No. 09-66, 2010 WL 1286077, at *2 (D.V.I. Mar. 31, 2010) ("The Third Circuit has recognized the appropriateness of estimates in establishing numerosity.") (citing Davis v. Thornburgh, 903 F.3d 212, 233 n.19 (3d Cir. 1990)).  However, the Court observes that each of these cases was handed down prior to Dukes, which reinforced the need for district courts to apply a rigorous analysis to the Rule 23(a) factors.  See also Hydrogen Peroxide, 552 F.3d at 320 (observing that a district court must actually make findings that each Rule 23 requirement is met or not met by a preponderance of the evidence and that "Rule 23 requires the court to 'find,' not merely assume, the facts favoring class certification.") (quoting Unger v. Amedisys, Inc., 401 F.3d 316, 321 (5th Cir. 2005)).

More recently, the Third Circuit narrowed the circumstances when this approach is acceptable, finding that only when a plaintiff shows "sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding," may a court rely on "common sense." Marcus, 687 F.3d at 596.  Relying upon Dukes and the recent Third Circuit law discussed herein, a court in this district thus recently found that "common sense and speculation will not meet the

Plaintiff's burden of proof" as to numerosity.  Bright v. Asset Acceptance, LLC, 292 F.R.D. 190, 199 (D.N.J. 2013).

Further, even if "common sense" was the standard, it is not clear that this would result in a finding of numerosity with respect to this sub-class.  Plaintiffs have not pointed to anyone, including the named plaintiffs, who has not had the vast majority of his or her evacuation expenses reimbursed by Defendants.  The evacuated population of 680 individuals presumably includes minors, some of whom may not have incurred evacuation-related expenses directly attributable to themselves.  It may also include those who relocated temporarily with little inconvenience and little to no expense.  Others may have received reimbursement of some kind from the assistance center without executing a settlement—as did the named plaintiffs—but unlike the named plaintiffs, incurred no further expenses.  If approximately 110 of the population of the evacuation zone fall into one of these categories, when added to the 531 excluded from the class for the reasons discussed above, fewer than forty individuals would make up the evacuation sub-class.

When a putative class plaintiff does not produce "concrete evidence of numerosity despite having had ample opportunity to do so," certification should be denied.  Turnage v. Norfolk Southern Corp., 307 F. App'x 918, 922 (6th Cir. 2009).[8]  In Turnage, which involved a train derailment that resulted in a hazardous chemical spill, the plaintiff attempted to certify a class of "all persons who were evacuated from the surrounding area" in order to recover for economic losses and other nuisance damages.  Id. at 920.  The Sixth Circuit affirmed the denial

---

[8] This Court distinguished Turnage in its Opinion on the motion to strike, declining to strike the class allegations at that juncture.  (Civ. No. 13-784., ECF Doc. No. 62.)  However, the Opinion made clear that Turnage was distinguished because it related to a motion for class certification, not a motion to strike, and its holding relied heavily upon the plaintiffs being unable to make a satisfactory showing of numerosity, despite having had a full opportunity to develop evidence of numerosity through the completion of discovery.

of class certification, describing the proposed class as "a sub-class of residents of the three-mile

radius who experienced some appreciable damage." Id. at 922.  The Sixth Circuit observed that,

like here, the proposed class did not claim to include every resident of that area, such as those

who may have been out of town during the evacuation or those who may have relocated

temporarily with little inconvenience or expense.  Id.  As in Turnage, Plaintiffs have "not

submit[ted] evidence to the district court of even one additional person who wished to seek a

legal remedy" against the railroad company.  Thus, as in Turnage, the evidence of numerosity is

"too speculative to merit certification."  Id. at 923.

While Plaintiffs need not identify class members by name or specify the exact number of

members, they must produce some evidence of the number of purported class members.

Plaintiffs have not offered any suggestion or estimate as to how many of the approximately 149

evacuees who have not settled or instituted their own action meet the sub-class definition on the

basis of having unreimbursed non-medical expenses.  Rather, Plaintiffs wish the Court to infer

that more than forty of them have such expenses, which the Court cannot do based on the law

discussed herein.

b.  Income Loss Sub-Class

The income loss sub-class proposes to be formed from the group of individuals who live

in the zone where residents were ordered to shelter in place.  Plaintiffs have not set forth precise

evidence as to the population of the shelter-in-place zone.  Rather, they indicate that Paulsboro

has a population of 6,000, and that everyone in Paulsboro who was not evacuated was subject to

the shelter-in-place order, as were some additional individuals in West Deptford.  Pl.'s Mot.

Certify at 1, 12.  Plaintiffs cite a filing by Defendants in connection with a previous motion,

which relied upon Census statistics indicating that Paulsboro has a population of approximately

6,113.  (Civ. No. 13-721, ECF Doc. No. 14 at 6.)  In their reply brief, Plaintiffs indicate that

there are estimated to be more than 2,200 residents of West Deptford who were subject to the

evacuation or shelter-in-place orders.  Plaintiffs do not cite any sources in support of the 2,200

figure.  Evidently, Plaintiffs believe that the income loss sub-class is made up from among these

two populations.

      This sub-class fails to meet the numerosity requirement for similar reasons as the

evacuation sub-class.  Plaintiffs do not allege that all residents of the affected area are members

of the income loss sub-class.  Of this population, 3,638 have settled their claims through the

voluntary efforts of Defendants.  (Wells Aff. ¶ 18.)  Further, nearly 400 have filed their own

actions. (Finnegan Cert. Ex. O.)[9]  Although Plaintiffs argue that this leaves many unaccounted

for, some of whom they believe must be members of the putative class, Plaintiffs have set forth

no evidence that allows the Court to conduct the rigorous analysis necessary to determine that

the proposed class is sufficiently numerous.  Like the evacuation sub-class, Plaintiffs have set

forth no evidence that even one resident of the shelter-in-place zone has incurred unreimbursed

economic losses.  Although the population from which potential class members might be drawn

is larger than with the evacuation sub-class, the same principles apply—the Court may not infer

numerosity from the number of the larger pool alone, nor may the Court assume numerosity

based on a speculative approach.  Plaintiffs argue that the "proposed Subclasses include

hundreds, if not thousands, of persons" subject to the shelter-in-place order, even after

discounting those who have settled their claims.  Pl.'s Reply at 5-6.  However, the class

definition requires that these individuals sustained lost income, which Plaintiffs do not account

---

[9] Presumably, the 680 evacuees would also have to be deducted, since the income loss sub-class is made up of those who sheltered-in-place, rather than evacuated.

for in their argument.  Plaintiffs want the Court to infer that sufficiently numerous individuals

remain in the shelter-in-place zone who lost income but did not settle.  Id. at 6.  Aside from this

being an improper way to establish numerosity, as discussed earlier, "common sense" would also

strongly suggest that the population of the shelter-in-place area includes many individuals who

did not suffer income loss, such as minors, retired persons, the unemployed, individuals who

were out-of-town, employed persons who may not have been scheduled to work on the three

days the shelter-in-place order was in effect, or employed persons who are compensated on a

salaried basis and continued to receive their full salary.  Given the apparently well-publicized

efforts of Defendants to reach early settlements, it is entirely possible that virtually every person

who suffered income loss either opted to pursue an individual claim or settled with Defendants.

As with the evacuation sub-class, "[m]ere speculation as to the number of class members—even

if such speculation is 'a bet worth making'—cannot support a finding of numerosity."  Hayes,

725 F.3d at 357 (citing Marcus, 687 F.3d at 596).

Thus, with respect to both of these proposed sub-classes made up of individuals,

Plaintiffs have not "prove[n] that there are in fact sufficiently numerous parties."  Id. (emphasis

in original).

c.  Business Income Loss Sub-Class

Although the Court has already determined that the business income loss sub-class is not

ascertainable, the Court observes that Plaintiffs also lack sufficient evidence of numerosity.

Similarly to the sub-classes of individuals, Plaintiffs attempt to establish the number of class

members by identifying a larger pool of 381 businesses with addresses in the relevant zone, not

all of which Plaintiffs claim to represent.  As with the individual classes, identifying a pool of

businesses that might have suffered unreimbursed losses, without more, is insufficient to satisfy

the requirement that the class be sufficiently numerous.  Defendants resolved the claims of 28

businesses through their voluntary efforts.  (Wells Aff. ¶ 20.)  Plaintiffs' expert indicates that the

pool of 381 businesses includes those that are "suspected to be out of business," and that the

"actual number of class entities" would be determined after the businesses produce

documentation to validate their losses.  (Domzalski Report at 4.)  While an inference that

businesses lost income may be logical in many cases, since the purpose of a business is to

generate revenue, Plaintiffs cannot make a showing of numerosity merely by defining a larger

group, which includes an unknown number of entities who they admit are not class members.  As

with the other sub-classes, such speculation is insufficient to show at this stage, as Plaintiffs must

to certify a class, that there are <u>in fact</u> sufficiently numerous members of this sub-class to warrant

class treatment.

### 2. Commonality / Predominance

Where an action proceeds under Rule 23(b)(3), as here, "the commonality requirement 'is

subsumed by the predominance requirement'" set forth in Rule 23(b)(3).  <u>Danvers Motor Co. v.

Ford Motor Co.</u>, 543 F.3d 141, 148 (3d Cir. 2008) (quoting <u>Amchem Prods., Inc. v. Windsor</u>,

521 U.S. 591, 627 (1997)).

To certify a class under Rule 23(b)(3), "questions of law or fact common to class

members" must "predominate over any questions affecting only individual members."  Rule

23(b)(3)'s predominance requirement is "far more demanding" than the commonality

requirement set forth in Rule 23(a).  <u>Amchem Prods.</u>, 521 U.S. at 623-24.  The need for

individual damages determinations does not, by itself, defeat class certification, especially where

"the fact of injury and damage break down in what may be characterized as virtually a

mechanical task, capable of mathematical or formula calculation."  <u>In re Community Bank of N.</u>

Va., 418 F.3d 277, 306 (3d Cir. 2005) (citing Windham v. Am. Brands, Inc., 565 F.2d 59, 68 (4th Cir. 1977)).  On the other hand, "where individual stakes are high and disparities among class members [are] great," courts should be hesitant to find that predominance exists.  Amchem Prods., 521 U.S. at 625.

The Court observes no barriers to the sub-classes of individuals under this analysis.  The question of Defendants' negligence is common to all proposed class members.  See Dukes, 131 S. Ct. at 2551 ("[f]or purposes of Rule 23(a)(2) even a single common question will do.")  Further, although the amounts of damages may be different, the method of calculation of damages will presumably the same; namely by adding damages confirmed through receipts and other documents in class members' possession.

However, with respect to the business income loss sub-class, the predominance requirement presents an additional problem for Plaintiffs. The Supreme Court has recently emphasized that individual damages issues may preclude certification under Rule 23(b)(3).  Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1431 (2013).  At the certification stage, the Court must be assured that the determination of whether the defendant's conduct caused injury to each class member can be made at the class level and without identifying damages that are not the result of the wrong.  Id. at 1434.  Damages must be "capable of measurement of a classwide basis."  Id. at 1433.  Where proof of damages is essential to liability, the need for "individualized proof of economic loss," instead of through a formulaic calculation, can defeat predominance.  Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 188 (3d Cir. 2001).

In connection with the business income loss sub-class, proof of damages is essential to liability, as a business with a Paulsboro address, but no income loss related to the derailment would not be a class member.  Thus, Plaintiffs must demonstrate a uniform damages

methodology and show a reliable class-wide method of proving damages in order to clear the predominance hurdle. See Bright v. Asset Acceptance, LLC, 292 F.R.D. 190, 202-03 (D.N.J. 2013) (observing that the "Supreme Court's recent opinion in [Comcast] is clear that a plaintiff seeking class certification must present evidence of a reliable methodology for calculating damages on a class-wide basis").

Here, Plaintiffs have not demonstrated that damages can be measured in a uniform manner across the entire sub-class of businesses, nor that the proposed model measures only damages attributable to their theory of liability. Plaintiffs assert that the damages suffered by this sub-class can be calculated by comparing each class members' sales during the fourth quarter of 2012 with sales during the preceding and following quarters, and also with the average quarterly sales from the years 2009 through 2011. (Domzalski Report at 7-8.) Plaintiffs' expert found that this is a reliable method of calculating the damages sustained by Don's Barbershop, one of the lead plaintiffs.[10] However, she acknowledged that this would not take into account seasonal variations that might play into the differences in income between quarters for some businesses, which could be accounted for using "more precise documentation" and making "seasonal adjustments, if required." Id. at 8. Thus, Plaintiffs fail to show that their proposed method of damages calculation would be accurate for all potential class members. Further, the proposed method does not take into account other reasons that some businesses might have reported decreased income in the applicable quarter, such as Superstorm Sandy, which affected the area in the same quarter. (Deposition of Patricia Domzalski ("Domzalski Dep.") at 76-77, Finnegan Cert. Ex. R.) Therefore, the model also may measure damages not attributable to

---

[10] Using this model, Ms. Domzalski calculated that Don's Barbershop lost $3,042 in income in the eighteen days following the derailment. (Domzalski Report at 7-9.) She did not analyze any other businesses, as Don's Barbershop is the only named plaintiff that is a business entity.

Defendants' alleged negligence.  Further, as discussed previously, the businesses in the putative class include businesses which may not generate business as a result of daily physical operations in the affected area, and businesses which may not have necessarily generated revenue during the late autumn, such as a "water ice" business, a swimming pool services business, and landscaping businesses.  Plaintiffs' expert admitted that determining whether these businesses lost income at all would require a review of their records.  (Domzalski Dep. at 82-84.)  Therefore, in the case of many proposed class members, individualized determinations would be required to demonstrate income loss, which is key to liability in this case.

While Plaintiff's expert indicates that she reviewed the types of businesses "in terms of seasonality issues and uniqueness," and "saw no reason to exclude any particular entity," this falls short of showing that damages can be proven at trial using methods common to the class. (Domzalski Aff. at 4.)  Plaintiffs argue that the predominance element is satisfied as long as there is a "factual basis" for their expert's opinion. Pl.'s Reply at 14.  However, this approach fails to take into account the Supreme Court's reiteration in Comcast that the rigorous analysis requirement applies to a district court's predominance findings.  Comcast, 131 S. Ct. at 1434. The Comcast holding was clear that district courts should satisfy themselves that the damages methodology proposed by an expert is actually reliable.  Id.  Neither is this rule emphasized by the Supreme Court a new one.  The Third Circuit has previously found that:

> First, the decision to certify a class calls for findings by the court, not merely a "threshold showing" by a party, that each requirement of Rule 23 is met. Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence. Second, the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action. Third, the court's obligation to consider all relevant evidence and arguments extends to expert testimony, whether offered by a party seeking class certification or by a party opposing it.

26

Hydrogen Peroxide, 552 F.3d at 307.  Thus, the Court finds that a more searching inquiry is required than merely finding that Plaintiffs' expert had a factual basis for her opinions.  For the reasons discussed in this section, Plaintiffs have not demonstrated a reliable method for calculating the businesses' damages uniformly on a class-wide basis, or of a uniform method for limiting such calculations to damages attributable to the derailment.

Finally, with annual revenue ranging from less than $50,000 to over $3,000,000, the potential "disparities among class members'" damages is great, which weighs against a finding of predominance.  Amchem Prods., 521 U.S. at 625.  Thus, with respect to the business income loss sub-class, failure to demonstrate satisfaction of the predominance requirement would constitute an additional reason for denial of class certification.[11]

### 3. Typicality

The third requirement under Rule 23(a) is that the claims or defenses of the class representatives must be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  While the claims of the class representatives need not be identical to the claims of all class members, their claims must be sufficiently aligned that the class representatives "will work to benefit the entire class through the pursuit of their own goals."  Newton, 259 F.3d at 183 (quoting Barnes v. American Tobacco Co., 161 F.3d 127, 141 (3d Cir. 1998)).  On the other hand, the named plaintiff's claims are not typical if his or her "individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based."  Baby Neal v. Casey, 43 F.3d

---

[11] Some courts addressing the impact of the Supreme Court's holding in Comcast have certified classes as to liability only, which Plaintiffs seek as an alternative.  See In re Deepwater Horizon, 739 F.3d 790, 817 (5th Cir. 2014) (finding that "[e]ven after Comcast, the predominance inquiry can still be satisfied under Rule 23(b)(3) if the proceedings are structured to establish liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members").  However, such a bifurcated approach is not appropriate here, as Plaintiffs' quest for certification also fails on other grounds.

48, 57-58 (3d Cir. 1994).

Each of the individual plaintiffs alleges lost income or expenses related to evacuation, which matches the damages sustained by the sub-classes of individuals they seek to represent. As the named plaintiffs and class members all seek to recover based upon negligence theories for damages sustained at the same time as a result of the same accident, typicality exists. Defendants assert that Wilson's and Lee's claims are not typical because both of them admitted at their depositions that they have no documentation of their damages, while Plaintiffs have argued in briefing the motion that class members have such documentation. However, documentation of loss is not part of the sub-class definition, and weaknesses in the named plaintiff's damages claims are not a barrier to certification. See Sullivan v. DB Investments, Inc., 667 F.3d 273, 305 (3d Cir. 2011). Accordingly, although the class does not pass the Rule 23(a) test for other reasons, the Court finds that the typicality requirement is satisfied with respect to the sub-classes made up of individuals.

Defendants also challenge the typicality of Don's Barbershop because of the unique issues of causation and damages that are presented. For example, it is located in the shelter-in-place zone, while other business may be in the evacuation zone, which was affected for a longer period of time. Further, Defendants raise issues related to those raised in connection with predominance. They argue that the impact on businesses that generate income through use of a physical property, like a barbershop, would logically be greater than businesses that do not generate business at a physical location, such as a trucking company. Other issues raised by Defendants include the size of the barbershop and sophistication of its business records, and the seasonal nature of some businesses in comparison to a barbershop, which would be less prone to seasonal variations in income. While it is not necessary to discuss each of these issues in detail

28

given the Court's findings as to ascertainability and the other Rule 23(a) factors, the Court does not observe any barrier to certification due to lack of typicality.  Generally, when the named class members allege harm as the result of the same "conduct that injured the absentee class members," the typicality requirement is satisfied.  In re Prudential Ins. Co. Sales Practice Litig. Agent Actions, 148 F.3d 283, 312 (3d Cir. 1998).  Because the claims of Don's Barbershop arise from the same alleged conduct as the claims of the other potential class members, typicality exists, notwithstanding any differences in the method of proving damages or degree of harm suffered.

### 4. Adequacy

The fourth requirement of Rule 23(a) is adequacy of representation.  The named plaintiffs must be capable of fairly and adequately representing the interests of the class, and plaintiffs' counsel must also be found adequate.  In re Prudential Ins. Co. Sales Practice Litig. Agent Actions, 148 F.3d 283, 312 (3d Cir. 1998).  If conflicts of interest exist between named plaintiffs and class members, the named plaintiffs will not be able to adequately represent the class.  Id.

Here, Defendants argue that a conflict of interest may exist between Wilson and Lee and class members who may wish to assert personal injury claims.  It is clear that "participation in a Rule 23(b)(2) class seeking injunctive relief does not ordinarily preclude absent class members from bringing their non-litigated claims in subsequent lawsuits."  In re Vitamin C Antitrust Litig., 279 F.R.D. 90, 114 (E.D.N.Y. 2012) (emphasis added).  However, the circuit courts of appeals have evidently not consistently resolved the question of whether participation in a Rule 23(b)(3) class seeking damages, rather than injunctive relief, would bar subsequent individual suits for another type of damages.  See Cameron v. Tomes, 990 F.2d 14, 17 (1st Cir. 1993) (finding that "a class action judgment . . . does not resolve any claim based on individual

circumstances that was not addressed in the class action); <u>Norris v. Slothouber</u>, 718 F.2d 1116,

1117 (D.C. Cir. 1983) (limiting this rule to class actions in "which no monetary relief is

sought").  Some courts have thus found a named plaintiff inadequate where a risk existed that

"subsequent courts would preclude absent class members from brining personal injury claims,"

where the named plaintiff did not suffer any personal injury.  <u>In re MTBE Prods. Liab. Litig.</u>,

209 F.R.D. 323, 340 (S.D.N.Y. 2002).  Although the Third Circuit has not decided this issue, one

panel, in vacating an order certifying a class, suggested that asserting separate claims for

"economic harm and harm in the form of personal injury," arising from the same set of facts

"may be . . . claim-splitting, which is generally prohibited by the doctrine of <u>res judicata</u>." <u>Nafar</u>

<u>v. Hollywood Tanning Sys., Inc.</u>, 339 F. App'x 216, 224 (3d Cir. 2009).

Because Plaintiffs' efforts to certify a class fail on other grounds, as discussed above, the

Court does not decide the adequacy issue.  However, given that this issue appears to be unsettled

within the Third Circuit, the Court would have some concern that absent class members who

may also wish to assert personal injury claims may not be adequately represented by class

representatives who have disclaimed any such claims.[12]

**D.  Motion to Seal**

Defendants have filed an unopposed motion to seal Exhibits C, D, H, I, J, and P, all filed

in connection with their brief opposing class certification.  Redacted versions of Exhibits C, D,

H, I, and J have been publicly filed, while Defendants seek to file Exhibit P under seal in its

entirety.

Exhibits C, D, H, I and J contain personal information about the named plaintiffs and

---

[12] The <u>Nafar</u> court also indicated that on remand, the district court should consider "New Jersey's doctrines regarding preclusion," among other factors.  <u>Nafar</u>, 339 F. App'x at 224.  This issue has not been briefed by the parties, which is another reason the Court does not now decide this question that appears to involve somewhat unsettled law.

their family members.  The only information redacted in these exhibits consists of Social

Security numbers, driver's license numbers, dates of birth, partial credit card numbers, and the

names of minors.  The Court finds that Defendants have met their burden of establishing that

these exhibits should be sealed because they have satisfied each element required by Local Civil

Rule 5.3(c)(2).  In addition to describing the nature of the materials, as discussed above,

Defendants have shown that a legitimate private interest exists in sealing the materials, as

confidential information may be protected from disclosure.  See In re Gabapentin Patent Litig.,

312 F. Supp. 2d 653, 664 (D.N.J. 2004) (citing Leucadia, Inc. v. Applied Extrusion Techs., Inc.,

998 F.2d 157, 165-66 (3d Cir. 1993)).  The individuals whose personal information is contained

in these exhibits have a clear interest in not having this information publicly disclosed.  Due to

the privacy expectations of these individuals, injury would result if they were made publicly

available.  Little public interest is served by disclosing this information, as the Court's holding

does not rely upon the personal information of the named plaintiffs and their family members.

Accordingly, the strong presumption of public access is overcome with respect to these

documents, and the Court will grant these motions to seal.

Exhibit P is a compilation of letters of representation from attorneys whose clients intend

to pursue individual actions against Defendants in connection with the derailment.  Most of the

attorneys did not indicate whether their clients were minors or not.  Defendants thus seek to file

the entire exhibit under seal to avoid inadvertently revealing the names of minors.  Defendants

have also made an adequate showing that this exhibit should be filed under seal.  The

presumption of public access is defeated with respect to the names of minor claimants.  See Fed.

R. Civ. P. 5.2(a).  Further, there is little public interest in disclosing the letters of representation,

as their only potential relevance to this motion is the existence of more than 1,000 persons who

intend to pursue individual claims, but have not yet filed suit, and not the names of or other identifying information about those persons.

## IV. CONCLUSION

Plaintiffs' motion for class certification will be **DENIED** for the reasons set forth herein.

Defendants' motion to seal will be **GRANTED**.  An appropriate Order shall issue today.

Dated: 8/20/2014                                                      s/ Robert B. Kugler
                                                                          ROBERT B. KUGLER
                                                                          United States District Judge